CITY OF GRAND RAPIDS *v.* CONSUMERS POWER CO.

1. PARTIES—RIGHT OF TAXPAYER TO INTERVENE—MUNICIPAL CORPORATIONS—PUBLIC UTILITIES—RATES.

A taxpayer of the city of Grand Rapids has no right to intervene, in support of defendant, in a suit brought by said city against a light and power company to enforce certain rates for light and power, simply because he is a taxpayer, and, with other taxpayers, must bear the burden and pay the expenses of the litigation, since the taxpayer is heard through the accredited representative of the city, the city attorney.

2. SAME.

That the suit is brought for the benefit of a certain class, *i. e.*, consumers of electricity, of which petitioner is one, would not entitle him to intervene in opposition to said suit, on the ground that he is interested in securing good service rather than in lower rates, even if he has a right to be admitted as a co-plaintiff to enforce his rights against the defendant.

3. SAME—STATUTES—INTERVENERS—INTEREST IN LITIGATION.

Nor is petitioner's interest in securing service rather than in lowering rates such a direct, financial interest as to amount to "an interest in the litigation" under 3 Comp. Laws 1915, § 12362, authorizing intervention with the right to be heard.

4. SAME—AMICUS CURIÆ AND INTERVENER DISTINGUISHED.

In cases involving questions of important public interest, leave is generally granted by the court to file a brief as *amicus curiæ*, but on such leave being granted it is not the practice to permit the *amicus curiæ* to argue the case or to go farther than to file his brief, in which it differs from that of intervention; the intervener becoming a party to the litigation, being bound by the judgment, having a right to introduce testimony and be heard, but having no right to question the propriety of the proceedings.

5. COURTS—JURISDICTION—POWER TO VACATE ORDER PERMITTING INTERVENTION.

A court of general jurisdiction has power to vacate an *ex parte* order permitting intervention in pending litigation where it has been improperly entered.

6. PARTIES—INTERVENTION—MOTION TO VACATE ORDER—MISNOMER.

Petitioner's contention that the motion to vacate the order permitting intervention should not have been granted because it described the order as one "appointing *amicus curiæ*," rather than as one allowing intervention, is without merit, where counsel was not misled by the misnomer, and, so far as the record discloses, was fully heard upon the question of petitioner's right to intervene.

Appeal from superior court of Grand Rapids; Dunham (Major L.), J. Submitted October 5, 1921. (Docket No. 21.) Decided December 21, 1921.

Bill by the city of Grand Rapids against the Consumers Power Company to enforce a franchise contract. Perry Schurtz was permitted to intervene. From an order vacating the permission to intervene, petitioner appeals. Affirmed.

*Ganson Taggart*, City Attorney, and *Willis B. Perkins*, Assistant City Attorney, for plaintiff.

*Shelby B. Schurtz*, for appellant.

FELLOWS, J. Plaintiff, city of Grand Rapids, filed a bill in this case against defendant, Consumers Power Company, seeking to enforce certain rates for light and power which were lower than the rates defendant insisted it has the right to charge. Defendant answered and filed a motion to dismiss. Petitioner, Perry Schurtz, was by an *ex parte* order permitted to intervene. Later on motion of the city attorney an order was entered vacating the former order permitting Mr. Schurtz to intervene. From the last made order petitioner appeals.

Petitioner, a taxpayer and a customer of defendant, using light in his office, home and garage, insists that he is more interested in having service from defendant than he is in the rates charged and claims that the suit brought by the plaintiff is "absolutely without foundation" and "should be dismissed." He asserts his right to intervene as a taxpayer and as a consumer of defendant's product.

Claiming his right to intervene because he is a taxpayer of the city, petitioner points out that if the suit is continued he with other taxpayers must bear the burden and pay the expenses and that, therefore, he has the right to be heard and participate fully in the case. If his contention is sustained then it follows that in all suits brought by the city all taxpayers may intervene and participate because they are paying the bills. Such a contention is without foundation. If the individual rights of a taxpayer are invaded by unauthorized municipal action he may be heard in court upon his own initiative, but this is a far different proposition than the one before us. In litigation brought by a city the taxpayer is heard through the accredited representative of the city—the city attorney. If he is misrepresented, if the city attorney is not as able as counsel of his own choosing might be, if the litigation is ill advised or unfortunate the remedy is the forum of the people,—the selection of another city attorney. Those chosen either directly or indirectly by the people to conduct the litigation for the city rather than the taxpayer himself must have control of such litigation. Petitioner must find something more substantial than his right as a taxpayer before he can come into a case brought by the city.

But it is insisted by petitioner's counsel that this suit is one brought for the benefit of a class, *i. e.,* consumers of electricity, and it is pointed out in the first brief filed by him that the bill contains the following:

"The bill of complaint of the city of Grand Rapids, a municipal corporation, suing in behalf of itself and of the citizens in said city, plaintiff * * * files its bill of complaint for and on behalf of each and all of its citizens * * * whether or not they shall choose to join in this bill of complaint or not."

If petitioner was here seeking the benefit of this bill and was asking to be admitted as co-plaintiff to enforce his rights against the defendant there would be much force in his contention. Indeed the city attorney apparently entertains the view that under such circumstances the authorities he cites would not be applicable as he says an entirely different question would be presented. But the petitioner has definitely negatived the idea that he is seeking the benefit of this bill, he has unmistakably alined himself with the defendant, and has clearly repudiated the proffer of the bill if it is to be so construed. He is insisting that the higher rates asked by defendant should be paid so that he may be insured good service. His interest in this litigation, if he has any, is with the defendant. The authorities which his counsel cite to the effect that a private individual may institute proceedings to compel service by a public service corporation are not apposite.

If there is any meritorious question in the case it grows out of petitioner's contention that he has "an interest in the litigation" under the intervention statute (3 Comp. Laws 1915, § 12362) by reason of the fact that he is a consumer of electricity furnished him by the defendant. He does not claim to have any contract with defendant and it is possible that his position would not be strengthened if he had one, due to the fact that defendant is conducting a public utility. The argument advanced on this branch of the case is that petitioner desires service; and that service is more important to him than costs; that

if defendant is required to litigate this suit which
petitioner contends "is absolutely without foundation"
and "should be dismissed" defendant will be required
to expend considerable  money, resulting in either ad-
ditional rates being imposed on petitioner or reduced
service, and that, therefore, he has such an "interest
in the litigation" as to permit him to intervene and
be heard.   It is patent that petitioner's interest is not
a direct financial interest.   It is at most indirect,
remote and conjectural.   Is it such as to permit him
to intervene?   A leading case is *Wightman* v. *Evans-
ton Yaryan Co.*, 217 Ill. 371 (75 N. E. 502, 3 Ann.
Cas. 1089).   This case was brought for the fore-
closure of a trust deed on a public utility.   Petitioners
for intervention held contracts for service and claimed
such interest as justified intervention.   The court,
speaking of petitioners, said:

"They do not pretend that they had any right, title,
or lien upon the mortgaged property.   The sole
ground of their claim of right to appear in that pro-
ceeding and prevent a decree of foreclosure is, that
they had certain contracts with the defendant com-
pany to furnish them heat and light, which contracts
would be impaired by a decree of foreclosure.   In
other words, they were mere contract creditors of the
corporation, and if they had the right to interfere in
the foreclosure proceedings, then any other creditor
of the corporation would have the same right, al-
though his claim had not been reduced to judgment or
otherwise made a lien upon the mortgaged property.
Counsel says they were not mere contract creditors
because their agreement with the company was to
furnish heat and light,—that is, their contracts were
with a service company.   But how that fact can be
given the effect of changing their relation to the com-
pany from that of mere contract creditors to parties
having a lien or right to the subject-matter of the
foreclosure proceedings is not shown, nor are we able
to discover any substantial reason or authority for
the position.   As said in *Marsh* v. *Green* [79 Ill. 385],

they will not be permitted to intermeddle when they have no substantial interest in the subject-matter of the suit;  *  *  *  If we turn to the decisions rendered by the various courts in those jurisdictions in which statutes are in force authorizing intervention, we find that they hold, without exception, that the interest which will entitle a party to intervene must be an interest in the matter about which the litigation is to be, and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment,— that is, the interest must be one created by a claim to the demand of property in suit, or some part thereof, or a lien upon the property, or some part thereof, which is the subject-matter of litigation."

In Ruling Case Law the rule is thus announced (20 R. C. L. p. 686):

"On the other hand, though the enforcement of the judgment, when rendered, might benefit or prejudice the applicant for intervention, this does not entitle him to intervene if its effect is indirect, as where the party for or against whom the judgment is rendered may, because of it, become more or less able to satisfy some obligation existing from him to the intervener."

A valuable note treating fully the subject of intervention will be found in volume 123 of the American State Reports beginning at page 280.   At page 305 the editorial writer says:

"The case of a creditor who has no lien for the security of his debt and has not reduced it to judgment, forms the most frequent illustration of a third person who may gain or lose by a judgment between others and yet whose gain or loss is of so indirect a character that it cannot entitle him to intervention (citing numerous authorities)."

It must be manifest that if creditors and parties holding contract relations may not intervene that customers of one of the parties may not.

Counsel for petitioner calls to our attention cases

where this court has permitted or requested the filing of a brief by the attorney general or some other attorney as *amicus curiæ*. This court is always desirous of having all the light it may have on the questions before it. In cases involving questions of important public interest leave is generally granted to file a brief as *amicus curiæ*, but on such leave being granted it is not the practice to permit the *amicus curiæ* to argue the case or to go further than to file his brief. In the case of intervention, the intervener becomes a party to the litigation and is bound by the judgment; he may introduce testimony and be heard; he must, of course, take the case as he finds it, and cannot question the propriety of the proceedings. While there is some similarity, the cases cited in which we have in the exercise of our discretion granted leave to file a brief as *amicus curiæ*, are in no way controlling of the question here presented of intervention as matter of right.

But counsel insists that by the first order, the one made on his *ex parte* application, petitioner was permitted to intervene and that such order cannot be set aside. He most strenuously insists that *Fertel* v. *Sampliner*, 18 Ohio Cir. Ct. Rep. 740, is a case on all fours with the one at bar. The only similarity between the two cases is due to the fact that in both cases the trial judge vacated the order permitting intervention. In that case upon appeal from the court of common pleas the circuit court held that the order to strike out or vacate should be reversed. But the ground of decision was not as claimed by counsel that the court was powerless to strike out or vacate the order, but on the ground that the petitioners had a right to intervene, and therefore the order to vacate, to strike out, was improperly entered. That case was an action of replevin and the interveners held chattel mortgages on the property involved. They had a

direct financial interest in the subject-matter of the litigation and had a right to intervene under the Ohio code. The trial court here, a court of general jurisdiction, was not so powerless in the administration of the business before it as to prevent the vacation of an order it had improperly entered. To so hold would permit one to surreptitiously get into a case on an *ex parte* application, and prevent getting him out although he was only a pestiferous intermeddler. Courts of general jurisdiction are not so powerless over their own interlocutory orders and their own proceedings as to prevent the action taken.

Finally it is insisted that the motion of the city attorney to vacate the order ought not to have been granted because it described the order as one "appointing *amicus curiæ*" rather than an order allowing intervention. But petitioner's counsel could not have been misled in any way by this misnomer of the order; the correct date of the order was given and the grounds of the motion properly identified it. Counsel for petitioner filed a lengthy brief discussing the merits of the motion and so far as the record discloses was fully heard upon the question of petitioner's right to intervene.

Counsel for petitioner has displayed much diligence in bringing to our attention a large number of cases. They have all been examined. Our reasons for not further discussing them is that not one of them sustains the right petitioner here asserts.

The order appealed from was right. It will be affirmed, with costs to the plaintiff.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.